Statement.

## Staunton.

MICHIE & OTHERS v. COCHRAN & OTHERS.

October 5, 1896.

1. NEW TRIAL—*Conflict of Evidence—Province of Jury.*—It is the province of the jury to weigh the evidence and determine what facts it proves. If there is a conflict of evidence, and the trial court concurs with the jury and refuses a new trial, the Court of Appeals will not disturb the verdict.

2. INSTRUCTIONS—*Evidence to Support—Weight of Evidence.*—If an instruction is asked which correctly propounds the law, it should be given if there is evidence tending to prove the supposed case, of however little weight the evidence may appear to the court to be entitled, or however inadequate in its opinion to make out the supposed case. But it is for the court to determine whether there is any evidence which tends to prove the supposed case. Having so determined, an instruction, otherwise correct, is not vitiated by adding "there being some evidence tending to" make out the case supposed. Though it is the province of the jury to weigh the evidence, this is not the expression or intimation of an opinion on the weight of the evidence.

Appeal from a decree of the Circuit Court of Albemarle county, pronounced June 28, 1895, in a suit in chancery wherein the appellants were the complainants, and the appellees were the defendants.

*Affirmed.*

In April, 1890, complainants filed their bill against the defendants setting out a contract which had been made in 1856 between William T. Early and J. Augustus Michie of the one part, and John Cochran of the other part, by which Cochran had contracted to make and keep open a ditch eight feet wide and two feet deep through certain lands of Coch-

ran to the boundary line of Early and Michie so as to completely drain the lands of the latter. Cochran was the owner of a mill-dam below the lands of Early and Michie, and the damming up of the water had considerably injured their lands. In order to settle the dispute between the parties, Early and Michie sold a boundary of the land to Cochran, and Cochran covenanted to make and keep open the ditch above mentioned for the purpose of protecting the lands retained by Early and Michie. The lands retained by Early and Michie came by successive conveyances to the complainants. They charged in the bill that the dam had become filled up with mud, and, having been washed away since 1865, had been rebuilt higher than it was previously, and that, in consequence of the heightening of the dam and its filling with mud, the water had been backed over the lands of the complainants and had practically destroyed a large boundary, and seriously injured other portions; that the ditch had not been kept kept open, and that the damage was irreparable. The bill waived an answer under oath, and prayed that the court would direct the abatement of the nuisance caused by the said dam, and by the failure to keep open said ditch, either by compelling the removal of the dam or otherwise, and that the court would direct an inquiry of damages already occasioned by said dam and by the failure to keep open said ditch, and would order payment of such damages by and to the proper parties, and for general relief.

The defendants demurred to and answered this bill. The demurrer was overruled, and on October 23, 1891, the following issues were ordered:

"It is now ordered and decreed that an issue be made up and tried at the bar of this court whether, since the 15th day of April, 1856, the dam in the bill and proceedings mentioned has been raised, and if raised, how much? and whether injury has thereby been caused to the lands of the plaintiff?

" 2d. Whether John Cochran or those claiming under him, have, at any time since the 15th day of April, 1856, failed to keep open a ditch eight feet wide and two feet deep, exclusive of the embankments, below the surface of the ground as it was in April, 1856, from what is now the lower end of the Michie flat land down to the old head of the pond, and whether injury has been caused thereby to the land of the plaintiffs.

"And the jury shall ascertain the amount of such damage from a period five years anterior to the bringing of this suit down to the time of their verdict, if in their opinion there has been any damage."

Upon the trial of these issues the jury awarded the complainants damages to the amount of $1,500. The defendants moved the court to set aside the verdict and grant them a new trial upon the ground that the verdict was contrary to the law and the evidence, and was excessive. The court put the complainants upon terms to accept $700, or else it would award a new trial. This the complainants accepted, and it appears that the defendants subsequently paid the amount. On June 28, 1895, the complainants filed an amended and supplemental bill in which they set out all the proceedings on the original bill, including the verdict, and admitted that the defendants had paid all the damages and costs which had been awarded against them, but charged that the defendants had wholly failed, neglected, and refused to keep open a ditch eight feet wide and two feet deep as provided in the contract of 1856, and that, by reason of such failure, neglect, and refusal, great, increasing, and continual damage and nuisance had been caused to the lands of the complainants. The complainants, amongst other things, prayed that the defendants might at once be compelled to abate and discontinue the damage and nuisance complained of in the bill, and, if necessary, that the court would direct an issue to ascertain the damages caused by the wil-

ful and malicious failure, neglect, and refusal of the defen-
dants to keep open said ditch from the 26th of May, 1892,
to the time of the filing of the amended bill. The defen-
dants demurred to the bill, and likewise answered the same,
relying largely upon the fact that it would have been useless
to have kept open the ditch according to the terms of the
contract, because the windings of the stream were such that
there could be no adequate drainage for the lands of the
complainants unless the channel of the stream were straight-
ened, and averring that the drainage was impaired, not by
failure to keep open the ditch, but by reason of the angles
in the stream. The defendants also insisted that the dam-
age was occasioned by the gradual filling up of the bed of
the stream from the cause aforesaid, and that the water upon
the complainants' land does not come from the creek, but from
springs or branches on either side of the creek whose
waters are discharged upon said land and remain there be-
cause there is no exit for them into the creek. The de-
fendants insist that the complainants could drain the
greater part or all of their land into the creek if they would
open their side ditches; that all of it could be drained into
the creek as it now is but for the fact that the surface of the
land has been lowered by freshets; and that the ditch would
not improve the drainage of said land, if it were made, un-
less the course of the stream were straightened, which is
not required by the contract. The defendants also averred
that they had removed the dam which the complainants had
theretofore averred was the cause of the trouble, and that
they had not made the ditch because there was no obli-
gation on them to do so, and it could not benefit the com-
plainants if they did. On February 6, 1895, the court
overruled the demurrer of the defendants, and directed the
following issues to be tried at the bar of its court:

"1st. To ascertain whether the defendants, the Cochran
heirs, have opened and kept open a ditch at least eight feet

wide and two feet deep exclusive of the embankment below
the surface of the ground as it was in 1856, from the 26th
day of May, 1892, to the date of the bringing of this suit,
from the land of the plaintiffs to the head of refluent water of
the old dam at Cochran's mill, known as Loch Lynn mills.

" 2d.  What damages if any should be assessed against the
defendants, the Cochran heirs, for their failure to keep said
ditch open as aforesaid."

Upon the trial of the issues the court gave the following
instruction:

" If the jury believes from the evidence that notwithstand-
ing the fact the defendants have failed to keep open the
ditch for the time alleged, yet if from the filling up of the
mill pond below the head of the old pond or from other
causes, the cutting and keeping open of said ditch during
such time would not have drained the lands of the plaintiffs,
or enabled the plaintiffs to do so, then the jury ought not to
find damages resulting from the said failure as usually given,
and further there being some evidence tending to show that
said pond has been filled up from causes beyond the control
of said Cochran."

To the giving of which instruction the complainants by
counsel objected, but the court overruled their objection and
gave the instruction, to which action of the court the com-
plainants excepted.

In response to the first issue, the jury found that the de-
fendants had not kept the ditch open.  In response to the
question propounded by the second issue, the jury replied
that the defendants should not be assessed with any dam-
ages.  The plaintiffs moved to set aside this verdict as con-
trary to the law and the evidence, but the court refused to
set the verdict aside, and entered a decree in favor of the
defendants for costs.  From this decree the complainants
appealed.

*Duke & Duke*, for the appellants.

*George Perkins*, for the appellees.

RIELY, J., delivered the opinion of the court.

Two questions only are presented on this appeal:

First, Did the court err in refusing to set aside the verdict of the jury on the ground that it was contrary to the law and the evidence?    And second, Did it err in its instruction to the jury?

All the evidence in the case has been carefully examined and considered.    It establishes that the land of the appellants is much injured, and that the injury is caused by a want of proper drainage.

But upon the further question, whether the insufficient drainage is the result of the failure to maintain a ditch eight feet wide and two feet deep below the surface of the ground, exclusive of embankments, from the line of the appellants on Meadow Creek to the head of Cochran's mill pond, in accordance with the contract of April 15, 1856, between W. T. Early and J. Augustus Michie, of the one part, and John Cochran, of the other part, the testimony is very contradictory and conflicting.    It is not possible for us to deduce from it a satisfactory conclusion that is contrary to that reached by the jury as manifested by their verdict.    Certain it is that the jury had ample justification in the evidence for their verdict.

It is peculiarly the province of the jury to weigh the evidence submitted to it, and to determine from the evidence the facts which it proves; and the rule is well established by repeated decisions of this court that, when there is a conflict of evidence, this court will not set aside a verdict where the court which tried the cause and heard the witnesses concurs with the jury, and has refused a new trial.    *Caldwell* v. *Craig*, 21 Gratt. 136; *Brugh* v. *Shanks*, 5 Leigh 598;

*Grayson's Case,* 6 Gratt. 724; and *Grayson* v. *Buchanan,* 88 Va. 255.

After the matters in issue had been submitted to the jury upon the evidence for their decision, the court of its own motion gave to the jury the following instruction:

" If the jury believes from the evidence that notwithstanding the fact the defendants have failed to keep open the ditch for the time alleged, yet, if from the filling up of the mill pond below the head of the old pond or from other causes, the cutting or keeping open said ditch during such time would not have drained the lands of the plaintiffs, or enabled the plaintiffs to do so, then the jury ought not to find damages resulting from the said failure, as usually given and further, there being some evidence tending to show that said pond has been filled up from causes beyond the control of said Cochran."

It was earnestly argued by the counsel for the appellants that the last clause of the instruction, " there being some evidence tending to show that said pond has been filled up from causes beyond the control of said Cochran," vitiated it.　It was claimed that this statement by the court amounted to an expression of opinion as to the weight and effect of a part of the evidence, and was consequently an invasion of the province of the jury.　But it does not bear such a construction, and it is not possible to see how it could have been so understood or interpreted by the jury.　It merely states that there was *some* evidence *tending* to show that the pond had been filled up from causes beyond the control of Cochran; and by the instruction the jury was, in effect, told that if it believed from the evidence that the pond had been filled up from causes beyond the control of Cochran, and that, in consequence of the filling of the pond, the cutting or keeping open the ditch in accordance with the contract of April 15, 1856, would not have drained the lands of the plaintiffs or enabled them to do so, then the jury ought not to find dam-

ages for the plaintiff as the result of the failure to cut or keep open the ditch.

By merely stating in its instruction that there "was some evidence tending to show" that the pond had been filled up from causes beyond the control of Cochran, the court did not express or indicate any opinion as to the sufficiency of the evidence to establish that fact. It did not thereby exceed its province, nor trench upon that of the jury.

That the jurors are, under the law, the judges of the weight and effect of the evidence, and its sufficiency, is not an open question; but it is equally the province of the court in giving an instruction, to judge whether there is any evidence on which to base it. If there be no evidence upon which to predicate it, it is error for the court to give it, and for that error its judgment would be reversed. *Norfolk, &c. R. Co.* v. *Neely,* 91 Va. 539; *Borland* v. *Barrett,* 76 Va. 133; and *Rea's Adm'r.* v. *Trotter & Bro.,* 26 Gratt. 585.

While it is safest and best to give an instruction that is asked for, if it propound the law correctly, and there is evidence tending to make out the supposed case, of however little weight the evidence may appear to the court to be entitled, or however inadequate in its opinion to make out the case supposed (*Hopkins, Brother & Co.* v. *Richardson,* 9 Gratt. 485, 496; *Farish & Co.* v. *Riegle,* 11 Gratt. 719; *Early* v. *Garland's Lessee,* 13 Gratt. 9; and *Honesty* v. *Com.,* 81 Va. 297), it is still nevertheless the duty of the court, before giving the instruction, to determine whether there is *any* evidence upon which it may be founded. This is in effect all that the court did. It merely expressed in the instruction itself what it was obliged to determine existed before it could properly give the instruction, that there was *some* evidence *tending* to make out the case supposed.

Without going into a rehearsal of the testimony, it is sufficient to say that the record discloses that there was evidence

before the jury tending to prove that the filling up of the mill pond was due to causes beyond the control of Cochran, and that, in consequence of the filling up of the pond, the cutting or keeping open the ditch in accordance with the contract of April 15, 1856, would not have drained the lands of the plaintiffs, or enabled them to do so. And there being evidence tending to prove this, the court did not err in assigning as a reason to justify its action in giving the instruction that there was *some* evidence *tending* to prove that the pond was filled up by causes beyond the control of Cochran. Our conclusion is that the instruction is not subject to any legal exception.

There is no error in the decree appealed from, and the same must be affirmed.

*Affirmed.*