## Richmond.

SOUTHERN RAILWAY COMPANY v. VALENTINE'S ADMINISTRATOR.

March 14, 1912.

1. RAILROADS—*Personal Injury—Grade Crossing—Duty of Traveler.*— All travelers on the public highway are charged with knowledge of the danger of grade crossings of the highway and railroads, and that it is their duty to look and listen for approaching trains before attempting to cross, and to exercise ordinary care to make the act of looking and listening effective. In the case at bar it is clear, under the facts and circumstances disclosed by the record, that the plaintiff's intestate, who was killed by a railroad train at a grade crossing, was not in the exercise of ordinary care when he drove upon the railroad crossing.

Error to a judgment of the Circuit Court of Mecklenburg county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Williams & Tunstall,* for the plaintiff in error.

*Faulkner & Faulkner, Charles T. Reekes,* and *Hiram Wall,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This is an action brought by the personal representative of Tinker Valentine against the Southern Railway Company to recover damages for causing the death of the decedent by the alleged negligent running of one of the railway company's trains.

It appears that between the hours of eleven and twelve o'clock of the night of July 20, 1907, the plaintiff's intestate left a church, where he was last seen alive, for his home, in a top buggy, with curtains off, and drawn by a gentle horse. The next morning,

near a highway crossing, were found his dead body and broken buggy on the north side of the railway near the end of the ties, and the dead body of his horse on the opposite side of the track. The evidence tends to show that the death of the deceased and the destruction of his property were caused by the railway company's passenger train, which passed over the crossing about one o'clock that morning. There was no eye-witness to the accident. The engineman of the railway company, who was a witness for the plaintiff, knew nothing of it, except that some hours after passing the crossing he found blood and hair on the pilot of his engine. He further stated that his engine, which was running thirty-five or forty miles an hour, was equipped with an electric headlight, and that he saw no one as he passed the crossing. He also testified that the whistle was sounded and the bell rung for the crossing. This latter statement of his is contradicted by several witnesses, who testified positively to the contrary.

The contention of the plaintiff is that the failure on the part of the railway company to give the statutory warning as its train approached the crossing, and to keep a proper lookout for the crossing (as he claims), was sufficient evidence of negligence to sustain the verdict of the jury. The railway company, on the other hand, insists that, even if this were true (which it denies), the facts and circumstances disclosed by the record show that the plaintiff's decedent was guilty of contributory negligence.

It appears that the crossing is between one and a half and two miles west of South Hill, a station on the railway company's road. From that station the highway over which the deceased traveled in going to his home ran not far from the railroad. From a point within two hundred yards of the crossing trains approaching from South Hill can be plainly seen. After passing that point, which is on the summit of a cut or "bump," as it is sometimes called by the witnesses, the highway and railroad approach each other, and when about one hundred yards (295 feet) east of the crossing, until the crossing is reached, they are only a few feet from each other, and the ground between the two is about level. It does not appear very clearly how far from the eastern end of that hundred yards, near which is a curve in the railroad, a train can be seen approaching from South Hill, but some short distance at least. From South Hill to within about one hundred yards of

the crossing the railroad is up grade, and from there to the crossing is down grade.

When near or at the edge of the crossing, a train can be seen approaching from the east about one hundred yards. One witness testified that you could not, when traveling along said hundred yards in a vehicle, hear a train coming from the east, "unless it blows mighty loud, and is right at you." The witness did not attempt to explain why the approach of a train cannot be heard there, and there is no fact in evidence which does tend to explain it. Be that as it may, it seems to be clear that if the deceased had been exercising ordinary care the accident would not have happened. His home, where he had lived for some time, was within a mile or two of the crossing; he was, therefore, acquainted with the crossing and the conditions there, and must be held to have known, as are all travelers, that the railroad track across the highway is a proclamation of danger, and that he must look and listen for approaching trains before attempting to cross. It was not only his duty to look and listen before going upon the crossing, but to exercise ordinary care to make the act of looking and listening effective. *Wash. S. Ry. Co.* v. *Talley,* 94 Va. 460, 461, 26 S. E. 834.

All, or nearly all, of the witnesses who testified that the train did not *give* the statutory warning as it approached the crossing, testified *t*hat the whistle did blow when at South Hill. Those witnesses were west of the crossing, and, therefore, farther from South Hill than the deceased. When within two hundred yards of the crossing he could have seen a train approaching from South Hill; when within a hundred yards of the crossing he could have seen it a short distance back, and when at the edge of the crossing he could have seen its approach one hundred yards away. It seems to us clear, under the facts and circumstances disclosed by the record, that the plaintiff's intestate was not in the exercise of ordinary care when he drove upon the railroad crossing. *Southern Ry. Co.* v. *Hansbrough,* 107 Va. 733, 745–6, 60 S. E. 58.

The judgment complained of must be reversed, the verdict set aside, and the cause remanded to the circuit court for a new trial.

*Reversed.*