Syllabus.

## Staunton

## SPRINGS V. VIRGINIA RAILWAY AND POWER COMPANY.

### September 9, 1915.

1. STREET RAILWAYS—*Estimates of Speed.*—Phrases descriptive of speed of a street car such as "going at a considerable rate of speed," "pretty rapid," or "running like lightning," do not convey to the ordinary mind any definite conception of the actual rate, and are of little, if any, value in determining the same.

2. STREET RAILWAYS—*Excessive Speed—Personal Injury—Contributory Negligence.*—Where damages are sought to be recovered of a street railway company for a personal injury alleged to have been caused by the excessive rate of speed at which defendant was running its car, and it appears from the evidence for the plaintiff that he was guilty of negligence which contributed to and concurred in the cause or causes of his injury up to the moment of the happening thereof, there can be no recovery.

3. RAILROADS—*Grade Crossing—Duty of Traveler.*—The duty to look and listen before attempting to cross a railroad track which the law has imposed upon the traveler upon a highway, continues as long as the occasion for the exercise of the duty continues, and if there was any point at which by looking and listening the person injured could have avoided the accident, and he failed to do so, his contributory negligence defeats a recovery for the injury.

4. RAILROADS—*Grade Crossing—Duty of Traveler.*—The rule stated in the preceding paragraph is not subject to the qualification that the duty to look and listen before crossing the railway track continues only "until a prudent man will appreciate no further danger." Such a qualification would destroy the rule entirely, as it would leave it to the jury to fix the undetermined and undeterminable point of time when a prudent man would apprehend no further danger.

5. RAILROADS—*Grade Crossing—Persons Approaching Track.*—An engineer operating a railroad engine who sees a person approaching a grade crossing in plain view has a right to presume that he will not go upon the track, unless there is something to indicate to him that the traveler is oblivious of the danger which confronts him.

Error to a judgment of the Circuit Court of Norfolk county in an action of trespass on the case. Judgment for the defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Jeffries & Jeffries* and *Wolcott, Wolcott, Lankford & Kear,* for the plaintiff in error.

*Williams, Tunstall & Thom* and *Henry W. Anderson,* for the defendant in error.

Cardwell, J., delivered the opinion of the court.

This action was brought by A. A. Springs to recover damages of the Virginia Railway and Power Company for personal injuries suffered by him in a collision with one of the defendant company's cars at Ocean View, in Norfolk county.

At the trial of the cause, and after the plaintiff had introduced his evidence, the defendant company demurred thereto upon a number of grounds stated in writing, which demurrer the court sustained and entered its judgment for the defendant company. To that judgment this writ of error was allowed.

Defendant in error owns, including its right of way, and operates a line of double track electric railway from Norfolk city, through Ocean View on to Willoughby Beach, while a branch line at Virginia Bay station, which is west of the main station at Ocean View, turns sharply to the left going to Pine Beach. Ocean View is a summer resort where quite a number of people spend the summer months, living in cottages located principally on each side of defendant in error's railway tracks, there being a roadway on each side adjacent to the railway tracks and the cottages

fronting upon the same. During the summer season these cottages are usually well filled with people—men, women and children—who are passing to and fro in various numbers at all hours of the day. The first railway station in Ocean View which is reached by the electric cars of defendant in error in going from Norfolk is what is known as Ocean View station proper. Another station is west of Ocean View station proper, where a road, called First street, crosses defendant in error's tracks, and from this crossing and station, going west, there is a roadway on each side of and immediately adjacent to the railway tracks. On the north side of this roadway or street (all of the roadways at Ocean View being commonly spoken of as streets) which is north of and adjacent to the railway tracks, there is a granolithic sidewalk parallel to the railway tracks going from Virginia Bay station to Ocean View station proper, the roadway on that side of the railway tracks being between the sidewalk and the tracks, while there is no sidewalk on this roadway or street adjacent to or south of the railway tracks. A large number of cottages are located adjacent to each of these roadways or streets, on each side of the railway tracks from Ocean View to Virginia Bay station, the larger number being on the south side of the roadway or street lying south of the railway tracks and in front of these cottages there are either board or cinder walks constructed across this roadway or street, crossing the railway tracks to the roadway or street on the opposite or north side of the tracks, over which walkways occupants of the cottages south of the railway tracks pass in crossing the tracks to roadway or street on the north side where the granolithic sidewalk is located. During the summer of 1913, plaintiff in error occupied one of these cottages located on the south side of the railway tracks fronting on the roadway or street adjacent thereto and about 150 feet west of First street

crossing, and 700 or 750 feet from Virginia Bay station. Between his cottage and Virginia Bay station there were fourteen of said walkways and one driveway (less than 50 feet apart) which crossed the railway tracks, and on which occupants of these various cottages cross the railway tracks to the street on the opposite side in order to reach the sidewalk in going to and from Ocean View. One of said board crossings was located immediately in front of plaintiff in error's cottage over which he, his family and guests, had to pass in crossing the railway tracks and reaching the sidewalk on the opposite side. Chesapeake Bay lies north of Ocean View and on the opposite side of the defendant in error's railway tracks from the cottage occupied by plaintiff in error during the summer season of 1913 when Ocean View, as was usual, was crowded with visitors.

On the morning of August 4, 1913, plaintiff in error crossed the railway tracks and went to the beach, going along First street to where it reaches the bay, looking for fish, and on his return, when he reached the intersection of First street and the roadway or street on the north of the railway tracks, he turned westward and walked along the granolithic pavement towards the crossing in front of his cottage. Before leaving the sidewalk he could see down the tracks to Virginia Bay station, there being slight, if any, obstacles to a view. He then left the sidewalk about thirty feet east of his crossing and started diagonally across the roadway or street to a point where it intersected with the street on the north side of the railway tracks, and when he reached the middle of the street he had a perfectly fair view all the way to Virginia Bay station, a distance of 700 feet or more, where the railway tracks turn towards Pine Beach. At that point, according to his own testimony, his hearing being impaired, he stopped and looked to see if any car was ap-

proaching, and there was nothing in sight between him and the bend of the railway tracks at Virginia Bay station. The point where he stopped to so look was about fifteen or twenty feet from the sidewalk on the north side of the tracks, and his statement is: "I took a fair view right there and there was no car in sight. I felt so sure that I did not look any more," but stepped to his crossing and was walking upon the same across the tracks, looking straight ahead of him; that after crossing the westbound track and as he was entering upon the eastbound track, a car from Pine Beach going east towards Ocean View came along "at a terrific rate of speed" without sounding bell or whistle and caught him, throwing him into the air and landing him between the east and westbound tracks, and that the speed of the car was such that it ran beyond First street station or over 150 feet before it could be stopped.

Although twice stated in the petition for this writ of error that "the defendant admitted gross negligence," the record does not bear out the statement. On the contrary, one of the express grounds of the demurrer to the evidence was as follows: "(1) The evidence fails to show that the defendant was guilty of any negligence in the premises."

Running its car which struck plaintiff in error, "at a dangerous rate of speed" is the sole ground of actionable negligence alleged against defendant in error. As to the speed of the car, plaintiff in error in testifying in the case gave no estimate as to its speed, while other witnesses for him who undertook to speak in comprehensible language vary in their estimates of the speed of the car at from 25 to 35 miles an hour; while others use such expressions as "going a considerable rate of speed," "pretty rapid," "running like lightning." None of these witnesses, however, gave any evidence capable of conveying to the

ordinary mind a definite conception of the physical fact, viz., the actual speed of the car.

As said by the court in the case of *Foley* v. *Boston, &c. R. Co.,* 193 Mass. 332, 79 N. E. 765, 7 L. R. A. (N. S.) 1076: "Mere expletive or declamatory words or phrases as descriptive of speed or acts unaccompanied by any evidence capable of conveying to the ordinary mind some definite conception of a specific physical fact, and depending generally upon the degree of nervous emotion, exuberance of diction and volatility of imagination of the witness, and not upon her capacity to reproduce by language a true picture of a past event, are of slight, if indeed they are of any, assistance in determining the real character of the fact respecting which they are used."

In this case the maximum estimate of the speed of the car in question, given by any one of plaintiff in error's witnesses who undertook to speak in comprehensive language on the subject, is thirty-five miles per hour. Still the question remains whether this indicated gross negligence, or indeed any negligence, on the part of defendant in error operating an interurban electric railway line over its own right of way, upon which latter question we need not and do not express an opinion, for the reason that plaintiff in error is not entitled to a recovery of damages for the injuries of which he complains, because of his own gross contributory negligence, appearing from his own evidence in the case, which negligence, on his part, continued up to and concurred with the negligence of defendant in error, if any, at the very moment of the accident causing his injuries; so that it is not even contended by plaintiff in error that any question of the "last clear chance" is involved in the case.

It may be true, as the learned counsel for plaintiff in error contends, that, under the conditions prevailing in Ocean View during the summer season when its road

ways or streets are as much or more frequented than those of a majority of the streets of Norfolk city, in determining whether a pedestrian crossing an electric car track is guilty of contributory negligence, the tests by which it is determined are based on the same general rule of ordinary care under the circumstances, one of these circumstances being what each has the right to expect of the other; but where damages are sought to be recovered under such conditions and it appears from the evidence for the plaintiff that he was guilty of negligence which contributed to and concurred in the cause or causes of his injuries up to the moment of the happening thereof, there can be no recovery in the case.

In this case, plaintiff in error, testifying with somewhat unusual candor, stated that he was walking on a granolithic walk facing the direction from which the car was coming, just before he undertook to cross over the railway tracks; that this walk was on the opposite side of the railway from his home, and he had to cross over the railway in order to reach his home; that in front of his house was one of the numerous plank crossings over the railway tracks; that he left the granolithic walk on which he was traveling at a point about 30 feet east of where the plank walk across the railway from the front of his house would have reached the granolithic walk, and undertook to walk in a diagonal direction to the crossing; that when he had gone, as he estimated the distance, only eight or ten feet, he looked to see whether a car was coming and seeing none he "never looked again until he was struck." When asked, "Was it at the time you left the granolithic walk that you looked for the car?" he answered, "The last time I looked, I looked several times when I was on the sidewalk, because all I have to do is to hold up my head, and I saw people way down." Again he says: "After I got into the street from the boathouse there was nothing to prevent them

from seeing me and nothing to prevent me from seeing the car;" and further he says, that when he got to the point at which he looked, he could "get a clear view." He knew, as he admits, that the electric cars were frequently passing to and fro over the railway tracks that he was to cross to reach his house to which he was going, yet, facing diagonally in the direction from which the car that struck him was coming so that if he had at any time looked after he had left a place of safety, he must have seen the car, he without once locking while traversing that distance (about 25 or 30 feet) went upon the railway tracks and was immediately struck. His hearing was impaired and that, as well as the presence of the railway tracks, admonished him of the danger of endeavoring to cross over the tracks without keeping a constant lookout for approaching cars.

In *Wash. &c. R. Co.* v. *Lacey,* 94 Va. 460, 26 S. E. 834, the plaintiff testified that he had looked before crossing the railway track, but the defendant company made the contention that he did not look when looking would have been effectual, and the opinion of this court, speaking through Buchanan, J., says: "Such looking is not that contemplated by law. The mere fact of looking and listening is not always a performance of the duty incumbent upon the traveler, for he must also exercise care to make the act of looking and listening reasonably effective. He must not approach the track at such a rate of speed that when he reaches a point where he can see or hear the train it is too late to protect himself from injury. He must exercise ordinary care in attempting to cross or in crossing the track, and care is never ordinary care unless it is proportionate to the known danger. . . . The track itself is a proclamation of danger. It is his duty before going upon it to use his eyes and ears. He should look in both directions from which a train could come, and listen, and, if his faculties warn

105

him of the near approach of a train, he should keep off the track."

The doctrine thus clearly stated in that case has been sanctioned and approved in a number of later decisions by this court, as well as in very many decisions of courts in other jurisdictions—in fact, it is the generally accepted doctrine in all the courts of the country.

Speaking of the well established principle that the duty to look and listen is imposed upon a traveler on a highway approaching a railroad crossing, the court's opinion in *Southern Ry. Co.* v. *Jones,* 106 Va. 412, 56 S. E. 155, says that this duty to look and listen for approaching trains is a continuing duty, "and if there is any point at which, by looking and listening, a person injured could have avoided the accident, and he failed to do so, then his contributory negligence defeats a recovery for the injury. If he could have seen and did not see an approaching train, then he failed to discharge the duty which the law imposes."

To engraft upon this well established rule the qualification contended for by plaintiff in error, viz., that the duty to look and listen before crossing a railway track continues only "until a prudent man will appreciate no further danger," would be to destroy the rule *in toto,* for in every such case it would doubtless be contended that at some undetermined or undeterminable point the time would have come when a prudent man would apprehend no further danger, and the location of that point would be a question for the jury. The language of the decided cases to which we have adverted admits of no such qualification of the rule. In effect these cases hold that the duty to look and listen before attempting to cross a railway track, which the law imposes upon the traveler upon a highway, continues as long as the occasion for the exercise of the duty continues, and say, in express terms, that if there was any point at which by looking and listening the person injured could have avoided the accident and he failed to do so,

his contributory negligence defeats a recovery for the injury.

In the instant case, according to plaintiff in error's own showing, had he performed the duty of looking and listening for an approaching car, which the law imposed upon him, he could and would have seen the car that struck him in time to have kept off the railway tracks and thus have avoided the accident that caused the injuries he complains of. As remarked, it is not contended that the last clear chance doctrine is involved here, and no such contention could have been made with any sort of propriety, in view of the fact that up to the moment of the accident plaintiff in error had as good a chance as the defendant in error to avoid it, and assuming for the sake of argument only that the motorman or conductor of the car saw, or, by the exercise of ordinary care, could have seen, plaintiff in error approaching the railway tracks in front of the car, in plain view of him had he looked, there was nothing whatever to indicate to them that he was oblivious of the danger which confronted him. Under these circumstances, had these employees of defendant in error seen plaintiff in error approaching the railway tracks, of which there is no evidence, they would have had the right to presume that he was not going upon the tracks. *Southern Ry. Co.* v. *Davis,* 108 Va. 378, 61 S. E. 748; *Backus* v. *Norfolk, &c. R. Co.,* 112 Va. 292, 71 S. E. 528.

The judgment of the circuit court is right and is affirmed.

*Affirmed.*