Argued October 5, reversed and remanded November 6, 1917.

# CATHCART v. OREGON-WASHINGTON R. & N. CO.*

(168 Pac. 308.)

**Appeal and Error—Use of Transcript of Evidence.**

1. When a complete transcript of the evidence is put into the record, the only use that can be made of it is in the determination of the correctness of the ruling upon the motion for a nonsuit or for a directed verdict.

**Appeal and Error—Bill of Exceptions—Testimony.**

2. Under the statute relating to the bill of exceptions requiring that under each exception shall be grouped so much of the testimony as is necessary to explain the point of the objection, no more should be given.

**Railroads—Damage at Crossing—Contributory Negligence—Stopping.**

3. Though failure to stop on the part of plaintiff whose auto truck was injured at a crossing by defendant railroad's locomotive may be considered on the subject of contributory negligence with other evidence, it is not necessarily controlling; and if, by the use of his faculties, hearing and seeing, plaintiff could safely determine whether there was danger or not, stopping was not necessary.

**Railroads—Injuries at Crossing—Duty to Look and Listen.**

4. Where one approaching a railroad crossing is familiar with the situation, he must use greater care as the danger is greater; must, as

---

*On duty of traveler approaching railway crossing as to place and direction of observation, see notes in 37 L. R. A. (N. S.) 136; 42 L. R. A. (N. S.) 367.

On power of municipal corporation to regulate speed of, and signal from, train at highway crossing, see note in 17 L. R. A. (N. S.) 561,

For a discussion of the question of care required of driver of automobile at railway crossing, see notes in 21 L. R. A. (N. S.) 794; 29 L. R. A. (N. S.) 924; 46 L. R. A. (N. S.) 702; L. R. A. 1916A, 842.

REPORTER.

he approaches, look from a place where he can see, and listen from a place where he can hear—an imperative duty so long as there is any need of its exercise.

**Railroads—Injuries at Crossing—Duty of Automobile Driver to Look.**

5.  Safety to the public and travelers on trains requires that one operating an automobile over a crossing should carefully look upon the track itself, where a train may be expected, if there be opportunity so to inspect the situation; and the motorist, who neglects such duty, is negligent as a matter of law.

**Railroads—Injuries at Crossing—Contributory Negligence.**

6.  Where plaintiff, desiring to drive his motor truck over a railroad crossing, his hearing being interfered with by the ringing of the bell on a standing locomotive, went forward experimentally and collided with a switch engine on the next track, he was negligent.

From Wasco: William L. Bradshaw, Judge.

Department 1.   Statement by Mr. Justice Burnett.

This is an action to recover for damage alleged to have been inflicted by the defendant upon the plaintiff's auto truck as he was driving it across the defendant's railway tracks in The Dalles. The charge of negligence was substantially that in violation of an ordinance of the city restricting the speed of locomotives to 12 miles an hour the defendant negligently backed one of its yard engines in excess of that limit along one of its tracks without ringing a bell, whistling or giving any other sufficient warning of its approach while plaintiff was crossing and so ran upon his truck which he was driving at the time whereby it was broken and injured to his loss.

The alleged negligence is denied and the defendant avers in substance that at the time of the accident one of its work trains was standing upon one of its tracks with the front end of its locomotive approximately at the west side of Madison Street which crosses the railway from south to north at that point; that one of its yard engines was being operated easterly on an adjacent track at a speed not exceeding six miles per hour

with its bell ringing continuously, and that when it reached a point approximately three feet east of the west line of the intersecting street the plaintiff's automobile suddenly and without warning ran out from behind the standing train at a high rate of speed and so collided with the moving engine without any fault of the defendant, but, on the contrary, owing to the negligence and recklessness of the plaintiff.

The reply admits that the work train was standing in the situation alleged in the answer and otherwise denies the new matter urged in defense. A jury trial resulted in a verdict and judgment for the plaintiff from which the defendant appeals.

Reversed.   Nonsuit Ordered.

For appellant there was a brief over the names of *Mr. W. A. Robbins* and *Mr. A. C. Spencer,* with an oral argument by *Mr. Robbins.*

For respondent there was a brief and an oral argument by *Mr. R. R. Butler.*

Mr. Justice Burnett delivered the opinion of the court.

1. Several errors are assigned relative to the instructions given and refused by the trial court. The bill of exceptions, however, consists in a mere recital of them without any evidence collated with respect to any of them. The only means by which the testimony in the case is brought to our attention is by a complete stenographic report of all the utterances of the witnesses, court and counsel during the trial, annexed to the bill of exceptions as an exhibit. When thus put into the record the only use that can be made of it is in the determination of the correctness of the ruling

upon the motion for a nonsuit or for a directed verdict: *National Council* v. *McGinn,* 70 Or. 457 (138 Pac. 493) ; *Oliver* v. *Grande Ronde Grain Co.,* 72 Or. 46 (142 Pac. 541) ; *Smith* v. *Kinney,* 72 Or. 514 (143 Pac. 901, 1126) ; *Harrison* v. *Pacific Ry. & Nav. Co.,* 72 Or. 553, (144 Pac. 91) ; *Hoag* v. *Washington-Oregon Corp.,* 75 Or. 588 (144 Pac. 574, 147 Pac. 756). In support of his bill of exceptions counsel for the defendant relies upon the statement made in *McFarland* v. *Oregon Elec. Ry. Co.,* 70 Or. 27 (138 Pac. 458, Ann. Cas. 1916B, 527), that

"The formal statement in typewriting of the exceptions taken by defendant's counsel during the trial of the cause to the rulings and instructions of the court, comprising 23 pages, is certified to by the judge in the usual manner, and it is further attested that Exhibit 'A' contains all the testimony and evidence offered, together with the instructions given and refused, and that the bill of exceptions was settled and allowed August 27, 1913. * * The bill of exceptions herein strictly complies with the rules of our court and the transcript of the testimony is sufficiently identified and attached to the bill so as to make it a part thereof."

2. That case announces no doctrine at variance with the other decisions here noted. On the contrary, an inspection of the record in the McFarland Case shows that under each exception was grouped so much of the testimony as was necessary to explain the point of the objection and no more. It is platitudinous to repeat that the statute requires such an arrangement of the bill. It is in the interest of convenience and expedition in the transaction of business in this court. With the modern facilities for taking and reporting testimony the tendency is to amplify the record to an unreasonable extent and it hinders the dispatch of judicial business for the court to yield to the demand that

it should search through such a great mass of manuscript to pick out in detail the evidence applicable to each of the numerous objections urged by counsel. Hence it is that owing to the code provision and the uniform rule laid down by the precedents mentioned, we will consider only the correctness of the ruling of the trial court on the motion for a nonsuit at the close of plaintiff's case. We may premise by saying that there was enough testimony to take to the jury the question about the negligence of the defendant.

It appears from the evidence and is admitted that the place of the accident is within the municipal limits of The Dalles where Madison Street crosses at right angles the other thoroughfare commonly known as First Street. At the point of collision between the truck and the locomotive, there are six tracks of the defendant running in a general easterly and westerly direction along First Street. The fourth and fifth counting from the south are main tracks used for through traffic and the others are switch and passing tracks. At the southwest corner of the intersection of the two streets stands a building known as the yard-master's office. At the southeast corner is the old freight-house. At or near the northeast corner is a manufacturing plant operated by the Libby-McNeil Company. The plaintiff had been in the truck and dray business in The Dalles for many years and was thoroughly familiar with the crossing in question. He stated as a witness that sometimes he would pass over that crossing fifty times a day; sometimes but once, and sometimes not at all; but that in the summer-time he would probably go over there fifteen times a day. He says the place was in the yard limits of the defendant and that there were trains passing daily and switching of cars going on every day. It is stated by

all the witnesses that a work train had been made up heading east and was standing on the main track for trains going eastward.   The pleadings admit that the front end of this engine was approximately on the west line of the crossing street, but some of the witnesses say it projected ten or twelve feet into Madison Street. The plaintiff testifies substantially that attached to this standing locomotive was a work train of six or seven cars which either were loaded with material as high as box-cars or were otherwise of themselves of that height, and that it was practically a solid train. He had loaded his truck at a point south of the tracks and had come around into Madison Street where he turned north and traveled to the point of collision which occurred on the fifth track, being the one next north of where the work train and its engine were standing.   All the witnesses say that the bell on the locomotive attached to the work train was ringing continually.   The plaintiff testifies that he passed in front of that locomotive at a distance of about eighteen feet traveling substantially in the middle of the street.   He says:

"I started out south from the depot and turned the corner and went north about twenty feet from the east side of the street going north.   I got over on the fourth track and started, kept on going across slowly and the switch-engine was approaching very rapidly up on the fifth track and hit me as I was going across. * * I started to go slow from about ten or fifteen feet from the first track and I was driving slow and carefully, going along looking and listening, didn't hear nothing coming, I got pretty near in front of the other train and I looked and listened but couldn't see anything.

"Q. Did you slow down there?

"A. Slowed down in front of this other train.   I was going across there and just about the time I was

going to go across this switch-engine came at a pretty high speed down the opposite track alongside this wrecking train standing there.

"Q. Why did you slow down then?

"A. Because I couldn't see very well there and I wanted to see if there was anything coming.

"Q. Did you endeavor to hear if there was anything coming?

"A. I couldn't hear nothing at all.

"Q. Did you hear any bell ringing?

"A. Only the one that was standing there.

"Q. Was any bell ringing on the switch-engine that struck your auto truck?

"A. No, sir.

"Q. Did it sound any whistle?

"A. No, sir.

"Q. Was that engine coming pretty fast?

"A. Coming pretty fast, yes, sir.

"Q. How far away was it from where,—how far away was it when you saw it from where you were, about how far?

"A. The first time I seen it?

"Q. Yes.

"A. Probably ten or twelve feet, something like that."

He stated in effect that in his judgment the engine which struck him was going 25 or 30 miles an hour. To the question:

"Have you been around the freight-yards and the switching tracks, around the switching engines a good deal or not?" he answered, "I am around them every day.

"Q. For how long a period, extending from how long a period has your work taken you around?

"A. I have been around for the last twenty years. I worked for my father a long time before I was in business for myself."

The testimony on his part is to the purport that the switch-engine collided with the truck on its left front

wheel and slued it around at an angle with the track, but that he was not dislodged from his seat nor injured in his person.   One of his witnesses looking from the Libby-McNeil plant at the northeast corner of the intersection of the two streets saw the switch-engine 300 feet away coming toward the point of collision.   Another witness for the plaintiff testified in substance that as the plaintiff came to the tracks he was going very slowly, and said,

"He leaned out ahead of his wheel, I imagine, trying to peer around the corner of the wrecker engine. Seeing nothing and I imagine hearing nothing he went on."

It was impossible for the plaintiff to look westward along the track on which the switch-engine was running until he had proceeded far enough to see past the engine attached to the work train.   Reduced to its lowest terms the situation is one where the plaintiff thoroughly familiar with the crossing and its surroundings approached in his auto truck in front of the standing locomotive upon which its bell was continually ringing, unable to see through the work train or its locomotive and continuing to drive slowly toward the track and to collision with the oncoming switch-engine.   It is true that one witness said he leaned forward over his wheel as though trying to peer around the corner of the work train, but it is manifest that he could not see down the adjacent track from that point. One witness also stated he stopped in front of the work train.

3.  Some authorities inculcate the principle that under such circumstances it is the duty of the traveler to stop and look and listen.   In the case of *Blackburn* v. *Southern Pac. Co.,* 34 Or. 215 (55 Pac. 225), this court

held in effect that if the vehicle operated by the traveler was making a noise that would materially interfere with his hearing the approach of a train, he was guilty of contributory negligence if he did not stop for the purpose of listening so as to eliminate the noise made by himself.   While failure to stop may be considered on the subject of contributory negligence with other evidence it is not necessarily controlling in the matter.   If, by the use of his faculties of hearing and seeing, one approaching a crossing can safely determine whether there is danger or not, stopping would not essentially add to or detract from his diligence. Stopping is necessary only when continued advancing would materially affect his senses of seeing or hearing. In *Hecker* v. *Oregon R. R. Co.,* 40 Or. 6 (66 Pac. 270, 23 Am. & Eng. R. R. Cas. (N. S.) 33), the traveler was excused from the duty of stopping as a matter of law and his case sent to the jury because the vehicle in which he was traveling was running in sand so as to make practically no noise at all and besides he could see the railway track at intervals and was in a position to hear if a train was coming.   In *Kunz* v. *Oregon R. & N. Co.,* 51 Or. 191 (93 Pac. 141, 94 Pac. 504, 52 Am. & Eng. R. R. Cas. (N. S.) 721), the plaintiff had looked and listened and had heard blasts of the locomotive whistle, but mistook them for those usually given when passing points far enough away for him easily to have crossed the track in safety.   Besides this, his hitherto trusty team unexpectedly balked on the track.   These conditions plainly made the question of his contributory negligence one for the jury.   Much like the *Kunz Case* is *Gambell* v. *Minneapolis etc. Ry. Co.,* 129 Minn. 262 (152 N. W. 408).   There the plaintiff driving his automobile looked along the track from a place of safety and seeing nothing proceeded.   When he got

upon the track his motor refused to work and stopped. While he was cranking it and trying to start his car the defendant's employees without warning suddenly backed some freight-cars against him. His conduct was manifestly for consideration by the jury. It is true, indeed, that contributory negligence is usually a question for the triers of the fact. There are many precedents that carry the doctrine to the extreme; but careful analysis will usually disclose that there were attendant conditions that differentiate the case from one where the issue was whether or not the injured party both looked and listened. So it is, that in the *Blackburn Case* after reviewing the authorities, Mr. Justice BEAN said for this court:

"In harmony with this rule, it is a principle of law, firmly established in this state as elsewhere, that the failure of a person about to cross a railway track on a highway, at grade, to look and listen for an approaching train is negligence *per se,* and will bar a recovery for an injury received by a collision with a train at the crossing," citing *Durbin* v. *Oregon R. & N. Co.,* 17 Or. 5 (17 Pac. 5, 11 Am. St. Rep. 778), and *McBride* v. *Northern Pac. R. R. Co.,* 19 Or. 64 (23 Pac. 814).

4. No case has been produced and we opine none can be which excuses the traveler from both looking and listening as he approaches a crossing; and it is well settled that, especially where he is familiar with the situation he must use greater care as the danger is greater. It is also reasonable as well as established by authority that he must look from a place where he can see and listen from a place where he can hear and that this duty is imperative so long as there is any need of its exercise; in other words, until the danger no longer exists. While the law in some instances will not require doing a vain thing it will not be satis-

fied with doing a vain thing where there is an opportunity for doing an effectual act. To have looked where he could not see when there was a practicable place from which he could have looked in safety is equivalent to not looking at all. The traveler has no right to depend exclusively on his hearing when there are attendant noises which materially interfere with the exercise of that function and he has a convenient opportunity to look both ways along the track in safety before crossing. After reciting that in *Washington So. Ry. Co.* v. *Lacey,* 94 Va. 460 (26 S. E. 834), the plaintiff testified that he had looked before crossing the railroad track, but the defendant company made the contention that he did not look when looking would have been effectual, Mr. Justice Cardwell, speaking for the court in *Springs* v. *Virginia Ry. & P. Co.,* 117 Va. 826 (86 S. E. 65), quotes with approval the language of Mr. Justice Buchanan, in this tenor:

"Such looking is not that contemplated by law. The mere fact of looking and listening is not always a performance of the duty incumbent upon the traveler, for he must also exercise care to make the act of looking and listening effective. He must not approach the track at such a rate of speed that when he reaches a point where he can see or hear the train it is too late to protect himself from injury. He must exercise ordinary care in attempting to cross or in crossing the track, and care is never ordinary care unless it is proportionate to the known danger. * * The track itself is a proclamation of danger. It is his duty before going upon it to use his eyes and ears. He should look in both directions from which a train could come, and listen, and, if his faculties warn him of the near approach of a train, he should keep off the track."

In another Virginia case, *Southern Ry. Co.* v. *Jones,* 106 Va. 412 (56 S. E. 155), it is said:

"This duty to look and listen for approaching trains is a continuing duty and if there is any point from which by looking and listening a person injured could have avoided the accident and he failed to do so then his contributory negligence defeats a recovery for the injury.   If he could have seen and did not see an approaching train then he failed to discharge a duty which the law imposes."

As illustrating the danger to be apprehended at a railway crossing, Mr. Justice McBRIDE, in *Long* v. *Pacific Ry. & Nav. Co.*, 74 Or. 502, 514 (144 Pac. 462, 145 Pac. 1068, L. R. A. 1915F, 1151), said:

"A railway track is always a place of danger. Every rail and every tie is shouting danger and it is the duty of a person to look if he is in a situation to look, and to listen if he is in a situation to listen."

The opinion of the Washington Supreme Court in *Averbuch* v. *Great Northern R. R. Co.*, 55 Wash. 633 (104 Pac. 1103), was written by Mr. Justice DUNBAR, long a member of that court and of whose probity and ability there was never any question.   He said:

"Common observation has taught us that a railroad track is a signal or notice of danger and the courts have almost universally said that it is such a notice as would put a prudent man on guard and that when he receives this notice his duty is to stop, look and listen before venturing on to the track or that he must act as an ordinarily prudent man would act under like circumstances if dangers of other kinds were threatening him.   That is all there is to the doctrine and of course it will not clear him of the charge of negligence if he looks and listens only where such acts are unavailing and senseless."

In *Wehe* v. *Atchison, Topeka & Santa Fe R. Co.*, 97 Kan. 794 (156 Pac. 742, L. R. A. 1916E, 455), Mr. Jus-

tice Marshall commented on a collision similar to the one in question, in these words:

"The driver of an automobile must exercise care for himself, and because of the character of the machine he is driving—a heavy steel structure, dangerous to others—he must exercise some degree of care for the safety of those rightfully traveling on a railroad train when he is about to cross the track. His machine is easy of control. It will stand where he leaves it. It will not get frightened. If by his negligence he should derail the train, he would be responsible to passengers injured, even though the men in charge of the train were guilty of negligence, if the rule applied to a passenger in an automobile when the driver of the automobile is guilty of negligence, is applied to passengers on a train."

The essence of the opinion is summed up in the syllabus as follows:

"The driver of an automobile cannot recover damages for injury to himself and his machine, where he approaches a railway track at a place at which he cannot see along the track until his automobile is in a place where it will be struck by a passing engine or cars, and does not stop his car to ascertain whether or not there is danger, although he listens before going into the place of danger and does not hear any engine or cars coming."

In *Corcoran* v. *Pennsylvania R. R. Co.*, 203 Pa. 380 (53 Atl. 240), the rule is laid down that:

"An adult thoroughly familiar with the movements of trains at a crossing, knowing that it was about the time for a train coming from the east, drives to within fifty feet of the tracks, stops and looks east but sees nothing because of a temporary obstruction to seeing in that direction, then rushed across and is struck by a train coming from the direction where he could not see. If this be not a deliberate taking of a great risk rather than submit to a slight delay, we do not know

what is.  It is one which the ordinary prudent man would not take, and there is no other reasonable inference to be drawn from his conduct.  It was not care according to the circumstances; that plaintiff's own evidence disclosed a case of contributory negligence.''

There is nothing in the instant case about expecting a train then due; but equivalent to that is the plaintiff's statement in substance that he knew the switching was going· on practically all the daytime so that a switch-engine was likely to pass at any moment.  It is inculcated in *Bates* v. *San Pedro etc. Ry. Co.,* 38 Utah, 568 (114 Pac. 527), that:

''It is not sufficient for a traveler in attempting to cross a railroad track to look in one direction.  It is his duty to look in both directions and he must select a position from which an effective observation can be made and he must look out for all trains and cannot assume that trains will pass only at specified times.''

A well-written opinion is that of Mr. Justice MARSHALL in *White* v. *Minneapolis etc. Ry. Co.,* 147 Wis. 141 (133 N. W. 148).  Among other things he said:

''Presence of a railroad track is such an admonishment of probable danger that it is inconsistent with ordinary care for a person, traveling on an intersecting highway across such track, to attempt to cross the track without first using his senses of hearing and seeing to the right and to the left, mindful of the probability that a train or car may dangerously invade the crossing at any time, so as to discover any such danger before passing into or remaining within the zone thereof.  (Citation of authorities.)  The duty to look and listen for an approaching train before attempting to cross a railroad track is absolute.  Failure to do so when there is opportunity therefor and to keep out of the path of an approaching train or car, which would come under one's observation by vigilant performance of such duty, is want of ordinary care as a matter of law.  (Other precedents cited.)  This absolute duty

of a person to look and listen before attempting to cross a railway track, extends to vigilant attention in all directions from which a train, locomotive, or car may come, and includes obligation to see and hear such, if there be any, which such attention, in view of the danger, will enable him to. Therefore, for a person to declare he performed such duty and yet failed to perceive an approaching train or car, in case of there being such in plain sight or hearing, does not raise a question of fact for decision by a jury. Such person must be presumed to either not have performed such duty or to have done so and yet heedlessly submitted himself to the danger, and that is particularly so as regards a person traveling on foot, 'since the danger zone in such a case is so narrow and it may be avoided with so little effort.' * * This rule of look and listen, in the circumstances stated, and to observe the dangers which are in plain sight or hearing to one in the vigilant performance of it, is, as before indicated, a rule of law, not a mere rule of evidence. An important companion rule to the foregoing is this: The danger to a person is so great in attempting to cross a railroad track without performing the duty of endeavoring to discover any approaching car or train which is in plain sight or hearing, by the vigilant use of his senses, and at the last opportunity for doing so before entering the zone of probable peril, that no mere diversion of attention or absorption in thought about other matters will excuse nonperformance of it.''

Later decisions of the Wisconsin Supreme Court may seem at variance with the rules laid down in the case just cited, but they will be found to depend upon special statutes, among others, Chapter 332 of the Session Laws of Wisconsin for 1909, where it is enacted in substance that slight want of ordinary care will not bar a recovery and that the burden is on the railroad company to show more than slight negligence on the part of the person injured; and Chapter 653 of the Laws of 1911, wherein it is said in effect that any

want of ordinary care will not bar recovery and that no lack of prudence less than gross negligence will defeat the plaintiff.

"To go on a railroad crossing in the way of a train which can be neither seen nor heard, but which would be either visible or audible except for some temporary hindrance to sight or hearing is to be negligent": *Central R. R. Co.* v. *Smalley*, 61 N. J. Law, 277 (39 Atl. 695). See, also, *Pennsylvania R. R. Co.* v. *Pfuelb*, 60 N. J. Law, 278 (37 Atl. 1100); *Pfuelb* v. *Pennsylvania R. Co.*, 61 N. J. Law, 287 (41 Atl. 1116, 43 L. R. A. 849); *Conkling* v. *Erie R. R. Co.*, 63 N. J. Law, 338, 339 (43 Atl. 666); *Swanson* v. *Central Ry. Co.*, 63 N. J. Law, 605 (44 Atl. 852).

In *Passman* v. *West Jersey & Seashore Ry. Co.*, 68 N. J. Law, 719 (54 Atl. 809, 96 Am. St. Rep. 573, 61 L. R. A. 609), the decedent was a bicyclist who rode at a moderate rate of speed in front of a train at a crossing and was injured. It is there said:

"A person about to cross a railroad track on a highway is presumed to know the danger and, while he may reasonably expect to be warned by the prescribed signals of an approaching train, he cannot justify himself in risking the danger unless he has exercised the senses nature has given to protect him from harm; and he must exercise such faculties in the manner that an ordinarily prudent person would exercise them under similar circumstances. The greater difficulty of discovering the danger is apparent from the surroundings the greater is the care required; and if the circumstances are such that one sense is rendered less reliable the others must be used to a correspondingly greater extent. The general rule to be applied requires a bicyclist on approaching a railroad crossing, where the view of the track is in any way obscured, to dismount, or at least bring his wheel to such a stop as will enable him to look up and down the track and listen before attempting to cross."

In *Follmer* v. *Pennsylvania R. R. Co.*, 246 Pa. 367 (92 Atl. 340), the plaintiff was familiar with the crossing and knew that the view along the track was obscured in the direction from which the train was coming until within 14 feet of the near track. He stopped his automobile 54 feet from the first track, listened, and ordered the chauffeur to go forward. ·

"When about 10 feet from the first track, he heard a warning cry from someone on the street and in looking south he saw a train approaching on the second track and he jumped from his seat."

The auto ran on, collided with the train and, either because of the impact or because the driver reversed it, came back upon plaintiff and hurt him. The opinion closes with this language:

"His negligence was in attempting to cross without first looking at a place where he could see."

Referring again to *Springs* v. *Virginia Ry. & Power Co.*, 117 Va. 826 (86 S. E. 65), the principle is there established that:

"The duty to look and listen before crossing a railway track which is imposed upon travelers upon a highway continues as long as the occasion for the exercise of such duty continues and if there is any point at which by looking and listening the person injured could have avoided the accident and he failed to do so, his contributory negligence defeats a recovery."

In the present instance there must have been clearance between the two main tracks else the trains could not have passed each other; hence, there was a place, to wit, in this clearance, from which the plaintiff safely could have viewed the track before going upon it. He says he looked, but in what direction does not appear, except that he tried to peer around the corner of the

work train.   He knew from his own experience that the danger to be apprehended was from rolling stock on the adjacent track.   It was his duty to look upon that track from a point where he could see it in both directions.   The question is not solely between the plaintiff and the defendant corporation which owns the railway.   So far as actual duty on the part of the plaintiff is concerned, it affects not only the laborers on the moving engine, but also the general traveling public.   If the plaintiff was able to estimate the speed of the engine at 25 to 30 miles an hour when seeing it for the first time within ten or twelve feet of him and if he had looked up or down the track upon which alone there was danger of an approaching train, as he could have done, he could have known at once that it was perilous to attempt crossing in front of such a swiftly moving locomotive.   His dilemma is either that he was negligent in not looking from a place whence he could see whether a train was coming or, if he did look from such a point he was negligent in attempting to beat to the crossing a locomotive which he saw was so close and moving so rapidly.

5, 6.   An automobile properly managed is susceptible of control within very narrow limits.   It will stay where it is put.   It is not to be frightened, yet, unless controlled, it is an engine of great danger and the larger question of safety to the public and travelers upon trains requires that one operating such a machine should carefully look upon the track itself where a railway train may be expected, if there be opportunity to so inspect the situation.   The motorist who neglects this plain duty is guilty of contributory negligence as a matter of law.   There can be no reasonable question but that the plaintiff whose hearing was interfered with in a material degree by the ringing of the bell on the

standing locomotive went forward experimentally and collided with the switch-engine. He cannot complain if the experiment turned out disastrously. Warned of danger by his thorough familiarity with the surroundings, he passed the zone of safety without efficiently looking from there upon the only place from which danger would come and went forward into the accident which happened. If he had collided with an innocent pedestrian coming from the direction pursued by the locomotive the footman could easily have established negligence on the part of the present plaintiff. His act was none the less negligent in the instant juncture and must defeat his recovery. The judgment of the Circuit Court is reversed and the cause remanded, with directions to enter a judgment of nonsuit in favor of the defendant.          REVERSED. NONSUIT ORDERED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BENSON and MR. JUSTICE HARRIS concur.