Syllabus.

## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## WASHINGTON-VIRGINIA RAILWAY COMPANY V. JAMES A. STRUDER, ADM'R OF JULIA DELIA STRUDER, DEC'D.

### March 16, 1922.

1. CROSSINGS—*Evidence as to Speed of Train—Case at Bar.*—In an action for death of plaintiff's intestate killed by a car of defendant company while approaching a station, the evidence was held not to sustain the contention that there was primary negligence on the part of defendant company in running the car past the station at a reckless and dangerous rate of speed, where the motorman testified that the car was running about twelve miles per hour, and no other witness gave any evidence capable of conveying a definite conception of the actual speed of the car.

2. CROSSINGS—*Violation of Ordinance—Footpath not a Grade Crossing.*—"Grade crossing" within an ordinance regulating the rate of speed of trains and warnings to be given at grade crossings refers to street crossings, and does not include a mere footpath across the tracks.

3. CROSSINGS—*Headlights on Car—Case at Bar.*—In an action for death of plaintiff's intestate while attempting to cross tracks of defendant railroad, the motorman testified that the headlights were burning at the time of the accident. A witness for plaintiff testified that there was "no headlight lit" when the car was still nine hundred feet away from the point of accident. Moreover, at the time of the accident it was not dark.

   *Held:* That this evidence failed to establish negligence on the part of defendant company.

4. CROSSINGS—*Omission to have Station Lighted—Proximate Cause.*—Where plaintiff's intestate was injured before she reached the station of defendant railroad, and there was nothing in the record to show that lights in the station would have in any way prevented the accident, if the lack of lights in the station was negligence, it was in no way the proximate cause of the injury complained of.

5. DEMURRER TO THE EVIDENCE—*General Rule* —On a demurrer to

the evidence, the demurrant is considered as admitting the truth of all his adversary's evidence and all just inferences that can be properly drawn therefrom by the jury, and as waiving all his own evidence which conflicts with that of his adversary or which has been impeached, and all inferences from his own evidence (although not in conflict with his adversary's) which do not necessarily result therefrom.

6. DEMURRER TO THE EVIDENCE—*Witnesses—Whether Witness has been Impeached.*—In an action for death of plaintiff's intestate killed by a car of defendant railway company, where the testimony of the motorman was not contradicted, except in a few instances, and as to matters immaterial to a proper decision of the case, it cannot be said that his testimony was impeached, within the rule that on demurrer to the evidence the demurrant waives all his evidence which has been impeached.

7. RAILROADS—*Injuries on or near Tracks—Contributory Negligence—Stepping on Track without Looking—Demurrer to the Evidence.*—Having due regard for the demurrer to the evidence rule, if it conclusively appears from the evidence that plaintiff's intestate came to her death by thoughtlessly and negligently stepping on the defendant company's railroad track just in front of one of its moving trains, under such circumstances that the company was powerless to save her from injury and death, when, by simply looking down the track she could have seen the approaching train for a distance of two hundred and eighty feet and saved herself from injury, then plaintiff's intestate was guilty of contributory negligence, and plaintiff cannot recover.

8. RAILROADS—*Injuries on or near Tracks—Stepping on Track without Looking—Exception to the Rule of Negligence per se.*—The exception to the rule that stepping on a railroad in front of an approaching train, without looking, is negligence *per se*, exists only when the circumstances are so unusual that the injured party could not have reasonably expected the approach of the train at the time he went upon the track, such as when a train has just passed upon the track, and in the instant case no such circumstances existed.

9. STATIONS—*Duty to Passengers—Contributory Negligence of Passenger.*—While it is true that passengers going to or from railway trains, at railroad stations, may rely upon the railway company to use ordinary care to protect them against injury from the operation of its trains, yet this puts upon the passenger the corresponding duty to use ordinary care to protect himself, and a failure to use such care on his part is

24

negligence, and stepping upon the track just ahead of an approaching train is a failure on the part of the passenger to use such care.

Error to a judgment of the Circuit Court of Arlington county in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Carlin, Carlin & Hall* and *Geo. B. Vest,* for the plaintiff in error.

*Edmund Burke,* for the defendant in error.

WEST, J., delivered the opinion of the court.

This is a suit brought by Julia Delia Struder's administrator against the Washington-Virginia Railway Company, to recover damages for her death, resulting from the alleged negligence of the defendant company.

The plaintiff's intestate was a young woman, nineteen years old, in the full enjoyment of all her faculties. She resided in the town of Potomac, between Alexandria and Washington, and was employed by the Bureau of Engraving, in Washington. Her home was near St. Elmo station, where the accident occurred, and she traveled almost daily from St. Elmo to Washington and return over the defendant company's road, and was well acquainted with the condition and surroundings at St. Elmo station, and with the schedule of the cars over said road.

The defendant company's road at St. Elmo has two parallel tracks and runs nearly north and south, the east track being used by north-bound cars and the west track being used by south-bound cars. Just south of St. Elmo station, these tracks pass under an overhead bridge, and the abut-

ments to this bridge obstruct the view of the tracks to the south from any one approaching the station from the east until he arrives near the east track. St. Elmo station is approached from the east by a path which runs just north of this embankment, and the station is on the west side of the west track. There is a cinder platform on the east side of the east track and on the west side of the west track.

The accident occurred just before dark on the afternoon of October 21, 1919. Plaintiff's intestate walked toward the station, approaching it from the east side, to take the train on the west track for Alexandria. One of the defendant company's electric trains, consisting of one freight car, had left Alexandria at 6:27 P. M., and made the run to St. Elmo, a distance of 3.11 miles, in about sixteen minutes. As plaintiff's intestate attempted to cross the east track, on her way to the station, she was struck by this train, and died of her injuries the next day, without regaining consciousness.

Upon the trial, after all the evidence on both sides had been introduced, the defendant filed a demurrer to the evidence, which was overruled, and judgment was entered in favor of the plaintiff in the sum of $3,000, the amount of damages assessed by the jury, subject to the decision of the court.

The only assignment of error relied on by the plaintiff in error is the action of the court in overruling its demurrer to the evidence.

The only eyewitness to the accident was the motorman, Edward D. Groves, who testified as follows: That he was standing at the time of the accident in the motorman's stand, on the front of the car; that he blew his whistle—two longs and two shorts—a warning, before reaching the Washington and Old Dominion overhead bridge; that his car was running twelve or fifteen miles an hour, with his headlights burning, when he approached St. Elmo station;

that when he first saw the lady he applied the brakes, rang the bell and blew the whistle—two short jerks; that the lady walked deliberately on the track twelve or fifteen feet in front of the car; that she was walking with her head down like she was in deep study, and was not thinking where she was, and never made any move to get out of the way or step up, when he blew the whistle, but "just went along, looking down like she was studying," and was about the middle of the track when the car struck her.

Witness Groves also testified that he blew the station whistle at the regular place, south of the embankment, which statement was not contradicted by any other witness.

The undisputed evidence of Witness Sinclair, chief engineer of the defendant company, is that a trolley pole on the east side of the north-bound track, approximately opposite the station at St. Elmo, is eight and one-half feet from the center of the north-bound track, and that a person standing by and on a line with that trolley pole and looking south can see 280½ feet down the center of the north-bound track without obstruction.

Witness had made a sketch and measurements of the physical conditions at St. Elmo station, and there is filed with his evidence a sketch and plat showing the physical conditions to be as stated by him.

[1] Was there any primary negligence on the part of the defendant company, as claimed by the defendant in error, consisting of five specific violations of the law, as follows:

1. Running the car past the station at a reckless and dangerous rate of speed.

Groves, the motorman, testified that his car left Alexandria at 6:27 P. M., and made the distance of 3.11 miles to St. Elmo station in about sixteen minutes, which was about twelve miles per hour. He said he looked at the clock on the office wall just as he started, and at his watch

between Del Ray and Mount Ida, and it was then 6:41, and that the accident happened about two minutes thereafter, or at 6:43.

No other witness testified as to the time the train arrived at St. Elmo, or as to the rate of speed the car was running, except plaintiff's witness, Beall, who testified that he first saw it at the overhead bridge, and it was "going fast;" "how fast, he did not know." It is true, plaintiff's witness Conlon, who arrived fifteen minutes after the accident, gave testimony as to where he found the car after his arrival at the station, but he could not say "for sure" where the car that struck deceased was standing when he got there, "for the simple reason that I was sort of excited at the time."

In *Springs* v. *Virginia Ry. & P. Co.,* 117 Va. 826, 86 S. E. 65, this court said: "As to the speed of the car, plaintiff in error, in testifying in the case, gave no estimate as to its speed, while other witnesses for him who undertook to speak in comprehensible language vary in their estimates of the speed of the car at from twenty-five to thirty-five miles an hour, while others use such expressions as 'going a considerable rate of speed,' 'pretty rapid,' 'running like lightning.' None of these witnesses, however, gave any evidence capable of conveying to the ordinary mind a definite conception of the physical fact, viz., the actual speed of the car."

[2] 2. Violation of the ordinance of the town of Potomac as to speed.

The answer to this question involves the construction of the ordinance referred to, which reads as follows:

### "Railroad Regulations.

(1) Speed Limit.—No locomotive engineer or motor car shall be propelled over and upon any grade crossing at a greater rate of speed than five miles per hour, and all such

engines shall be provided with a spark protector or apparatus to prevent danger of fire from their passing through the town.

"The person or persons having charge of such locomotive engines shall ring or cause to be rung, and the person or persons having charge of such motor car shall sound or cause to be sounded a gong or other bell or signal while approaching any such crossing. For violation of this section, the person or company so violating shall pay a fine of not less than five nor more than twenty dollars."

The undisputed evidence shows that the town of Potomac had no street which crosses the Washington-Virginia Railway at or near St. Elmo station, and that Braddock avenue, or, as it is sometimes called, La Verne avenue, terminates at the eastern boundary of its right of way. The only approach to the station is by two footpaths, which lead to the cinder sidewalk on the east of the tracks, or by coming downstairs, on the west side, from the right of way of the Washington and Old Dominion Railway. It is manifest, therefore, that there is no grade crossing at St. Elmo, within the meaning of this ordinance, and that the ordinance has no application to this case.

3. Violation of the ordinance requiring the sounding of a gong or bell, or signal, while approaching the crossing.

For the reason just stated, this part of the ordinance has no application here.

[3] 4. Failure to have headlights on the car.

Motorman Groves testified that the lights were burning when he reached St. Elmo, and is not contradicted by the testimony of any other witness. Hatton, plaintiff's witness, testified there was "no headlight lit" when the car passed Hume, but made no statement as to the lights when the car arrived at St. Elmo, which is 900 to 1,000 feet north of Hume. Besides, the car arrived at St. Elmo at 6:43,

daylight-saving time, or 5:43 sun time, and, therefore, before dark, making the lights unnecessary.

[4] 5. Omission to have station lighted as required by law.

The plaintiff's intestate was injured before she reached the station, and there is nothing in the record to show that lights in the station would have in any way prevented the accident. If the lack of lights in the station was negligence, it was in no way the proximate cause of the injury complained of.

[5] The familiar law applicable to demurrers to the evidence is stated by this court in *Duncan* v. *Carson*, 127 Va. 319, 320, 103 S. E. 665, 669, thus: "On a demurrer to evidence, the demurrant is considered as admitting the truth of all his adversary's evidence and all just inferences that can be properly drawn therefrom by the jury, and as waiving all his own evidence which conflicts with that of his adversary, or which has been impeached, and all inferences from his own evidence (although not in conflict with his adversary's) which do not necessarily result therefrom. This admission embraces the credibility of demurree's witnesses and the existence of all facts which demurree's evidence (which includes testimony) conduces to prove; or which may be reasonably inferred from his whole evidence, direct and circumstantial; and if several inferences may be drawn from that evidence, differing in degrees of probability, the court must adopt those most favorable to the demurree, provided they be not forced, strained, or manifestly repugnant to reason. The court, however, is not obliged to accept as true what it knows judicially to be untrue, nor what, in the nature of things, could not have occurred in the manner and under the circumstances mentioned, nor what is not susceptible of proof."

[6] We cannot accede to the contention of the defendant in error, that the testimony of Motorman Groves was im-

peached. In fact, it was not contradicted, except in a few instances, and as to matters immaterial to a proper decision of the case. To illustrate, Groves testified that he did not hear Miss Struder moan or groan while lying unconscious on the station bench, and Mrs. Underwood, the plaintiff's witness, testified that she heard her moaning and groaning. And again, Groves testified that when the car struck decedent she was thrown "right down on the track on the rail," and Beall, plaintiff's witness, testified that he saw, as he thought, a "bundle of rags or clothes fly out of the car in the air." Both statements are probably true.

A fair consideration of his testimony as a whole will not lead an impartial mind to the conclusion that Groves has testified falsely in any respect. His testimony being true, and the physical conditions at St. Elmo being as shown in evidence, we have no difficulty in reaching a just and proper conclusion on the question of contributory negligence.

[7] Having due regard for the demurrer to the evidence rule, it conclusively appears from the evidence that Julia Delia Struder came to her death by thoughtlessly and negligently stepping on the defendant company's railroad track just in front of one of its moving trains, under such circumstances that the company was powerless to save her from injury and death, when, by simply looking down the track to the south, before reaching the east rail of the track, she could have seen the approaching train for a distance of 280 feet and saved herself from injury.

[8] The exception to the rule of negligence *per se,* relied on by the defendant in error, exists only, "when the circumstances are so unusual that the injured party could not have reasonably expected the approach of the train at the time he went upon the track." In the instant case no such circumstances exist, for, as stated, the physical conditions at St. Elmo and the schedules of the regular trains were well

known, and the fact of running extra trains is presumed to have been well known to the plaintiff's intestate.

The situation alluded to in the opinion of the court in *Wilmouth* v. *Southern Ry. Co.,* 125 Va. 520, 99 S. E. 665, and in .the authorities there cited, relied on Dy the defendant in error, as being a situation in which the action of a person going on the track without looking to see if a second train is coming, is not negligence *per se,* was the immediately preceding passage of another train. In the instant case there is no evidence that any train immediately preceded the one which killed the deceased. So far as the evidence discloses, the next preceding train was on its schedule time, which was seven minutes ahead of the train which struck the deceased.

Sims, J., speaking for the court in the *Wilmouth Case,* says: "The conduct of the plaintiff's intestate in stepping upon the track in front of such visible danger, almost immediately upon him, must, under all the authorities, be regarded as negligence *per se,* which was the proximate cause of his death." Citing Thompson on Neg., 1666, 1667, 1672.

It is contended by defendant in error that plaintiff's intestate was on the premises of the defendant company by its invitation to become a passenger on its trains, and that she had a right to assume that the railroad company would so operate its trains as not to put her in peril, and that in such cases the *strict rule* as to *looking and listening* does not apply.

[9] It is true that passengers going to or from railway trains, at railroad stations, may rely upon the railway company to use ordinary care to protect them against injury from the operation of its trains, but this puts upon the passenger the corresponding duty to use ordinary care to protect himself, and a failure to use such care on his part is negligence.

In the case of *Gordon* v. *Director General,* 128 Va. 431, 104 S. E. 797, which was the case of a passenger who was killed soon after she stepped from the train, Prentis, J., speaking for the court, said: "If one who is in the full possession of his faculties steps upon a railroad track, in full view of and immediately in front of a rapidly approaching train, and meets death, his administrator cannot recover because the decedent's own negligence is the proximate cause thereof."

This authority, if authority be necessary, is conclusive of the instant case.

Upon the whole record, for the foregoing reasons, we are of the opinion that the plaintiff in error was guilty of no negligence which was the proximate cause of the injury complained of, and that the contributory negligence of the plaintiff's intestate was the direct and proximate cause of her death, and bars a recovery.

It follows, therefore, that the circuit court erred in overruling the demurrer to the evidence relied on by the defendant; and the judgment complained of will be reversed, and judgment entered here for the plaintiff in error.

*Reversed.*