# Richmond

## MAE HOLLAND v. W. C. HARRELL, TRADING AS HARRELL'S PHARMACY, AND B. BAYDUSH.

March 13, 1950.

Record No. 3599.

Present, All the Justices.

The opinion states the case.

*Louis B. Fine,* for the plaintiff in error.

*Rixey & Rixey* and *I. W. Jacobs,* for the defendants in error.

SPRATLEY, J., delivered the opinion of the court.

This action was brought by Mrs. Mae Holland to recover damages for personal injuries, suffered as a result of one of her fingers having been caught between the closed ends of a double door of a drug store in which she was a patron. W. C. Harrell, the owner and operator of the drug store and B. Baydush, the owner and lessor of the building in which the store was located were joined as defendants and charged with negligence in maintaining and operating the mechanical equipment for opening and closing the door.

The defendants pleaded the general issue and the case came on to be heard before a jury. After the plaintiff introduced her evidence, including the testimony of the two defendants called as adverse witnesses, the trial court sustained a motion to strike the evidence. The jury accordingly returned a verdict for the defendants. A motion to set aside the verdict was overruled. We granted a writ of error.

The material facts may be briefly summarized as follows: On March 7, 1948, Mrs. Holland, in company with Mrs. Ruth Sawyer, visited the drug store of Harrell at Virginia Beach, Virginia, for the purpose of shopping. The main entrance and exit to the store is a double door, which consists of two solid plate glass halves, each seven feet high and three feet wide. The halves operate as double-action doors, each being hinged to its respective door-jam. The opposite edges of the half-doors meet, but do not touch, in the center of the doorway, there being a vertical crack between the two halves. Horizontally across each half-door on each side there is a handle bar set out from the face of the glass. Each half operates inward or outward by respond-

ing to the pressure against that bar. When the pressure against the handle bar is relieved after the half-door has been opened, the half closes to its normal position by the action of a set of springs and a door check under the sill of the door. The purpose of the springs is to close the door. The door check, hooked to the hinge of each door, consists of a cylinder filled with a non-freezing fluid acting upon a hydraulic principle which "forms a compression" and checks the closing of the door and keeps it from "slamming too fast."

Mrs. Holland and Mrs. Sawyer entered the drug store through the door. After completing the purpose of her visit, Mrs. Sawyer left through the door and stood outside on the sidewalk waiting for Mrs. Holland to join her. Mrs. Holland, after purchasing a package of cigarettes, went to the right half of the door, pressed her hands against its handle bar, and caused it to swing open outwardly. She said she walked straight out of the store through the opening made by the right-half door without turning her body; that after she got out of the door, she released the handle bar; that the half-door quickly closed; and that the middle finger of her right-hand was caught in the center vertical crack between the two half-doors. The flesh at the tip end of the middle finger of her right-hand was cut off. She said that no part of the right half-door came in contact with any part of her person other than the injured finger; and that she did not know where her hand was, but that "it naturally had to be to the side of me." She could not explain how or why the finger on her right hand was caught in the crack between the doors which closed to the left of her body. Her sole explanation was that the door "came back quickly and with such force that it caught this finger."

The drug store building was completed and the door in question installed in April or May, 1947. The door was then inspected and found to be properly installed and working. The drug store had been in operation since June, 1947.

Since its opening it had been visited by approximately a quarter of a million persons, including many children of tender years, and no one had been injured by its door, nor had there been any complaint against it.

A witness testified that she entered the drug store the day following the accident to Mrs. Holland, and that as she released her hold on the handle bar of the door, the door came back "fast, quickly and with force." When asked to explain how one could get her finger caught in the door, she replied, "I didn't get my finger caught. I didn't put my finger in there."

W. I. Jackson, a marine engineer who had nineteen years' experience as a safety engineer, testified that in the fall of 1948, some months after Mrs. Holland's injury, he twice inspected the door at her request, and found nothing wrong or defective about it, with the single exception that the edges of the two half-doors when closed were only apart about one-sixteenth of an inch, while, in his opinion, the proper space should have been at least a quarter of an inch. He said that, as to the spaces mentioned, the only difference in result to a finger caught between the doors would be that in the wider opening the finger would be mashed rather than cut. This witness expressed the opinion that if the fluid in the door check leaked out or became dirty, it would be necessary to make some adjustment.

Another witness, Robert E. Atkinson, testified that for eight years he had been charged with the operation and maintenance of similar glass doors at another store in Norfolk, Virginia. He said that he made adjustments of the fluid in winter and summer because weather conditions made changes in the "slow action" of the fluid. The adjustments were made by means of a set of regulator screws which controlled the "push in" and the "push out" of the fluid. He further stated that he knew of no instance where a finger had been caught in the doors serviced by him, although millions of persons had used them.

The defendant, W. C. Harrell, stated that, at the time of

the accident to Mrs. Holland, the doors were swinging just like they had always worked from the day they were installed, and that it had never been necessary to make any adjustment of their operating mechanism, although the store had never been closed a single day from the time it opened in June, 1947.

No evidence was introduced, or offered for introduction, that the springs of the door were defective, that the fluid in the door check had leaked out or become dirty, or that the weather, before the accident, at the time of the accident, or thereafter, had caused the fluid to function improperly.

No question of law is in dispute as to the duty of the defendants. The sole question before us is whether there was sufficient evidence of negligence on the part of the defendants to submit the case to the jury. This necessitates a short review of the evidence.

Mrs. Holland does not claim to have been thrown off balance in any way by any stiffness in the door, or the pressure of the door against her. She said that in closing, the door did not come in contact with any part of her person, except her finger. She walked straight through the opening made by the outward swing of the right half of the door. In doing so, her right hand was naturally towards the hinged side of that right half. She did not turn her body, yet a finger on her right hand was caught in the center crack between the doors as the right half closed. Mrs. Holland was unable to explain how or what caused her to get in a position where the finger of her right hand got caught between the doors. She did not know, nor do we know. The accident is unexplainable on the basis of her evidence. She had control of her right hand. Since she was not thrown off balance in any way, it may be surmised that she has forgotten some movement on her part. It may be possible that after she went out, and before the door fully closed, she turned around, facing towards the door, and placed her hand in a position for her finger to be caught.

There is no probative value in such expressions as "fast," "quickly," "with force," and "stiff," as applied to the movement of the door. Unaccompanied by any evidence capable of conveying to the ordinary mind some definite conception of the specific physical fact, the words are relative and indefinite. They are generally dependent upon the views and opinions of the persons by whom they are employed. *Springs* v. *Virginia Ry., etc., Co.,* 117 Va. 826, 830, 86 S. E. 65; *Keen* v. *Harman,* 183 Va. 670, 674, 33 S. E. (2d) 197.

The fact that the opening between the two half-doors was one-sixteenth of an inch instead of one-fourth of an inch could not have been the cause of Mrs. Holland's finger being caught in the crack between the doors. It is manifest that if a finger is caught between the halves of any two solid plate glass doors the finger will be damaged.

The negligence of the defendants will not be presumed from mere proof of the injury. The burden was on the plaintiff to prove that the alleged negligence of the defendants was the proximate cause of the injury complained of. Mrs. Holland signally failed to present any evidence of actionable negligence on their part.

The trial court properly refused to permit the trial jury to speculate upon or guess at the cause of the accident. It follows that the judgment of the trial court should be affirmed.

*Affirmed.*